## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

NGAN KIM NGUYEN MINNIS,

        Plaintiff,

     v.

MARTIN O'MALLEY, Commissioner of
Social Security,

        Defendant.

CIVIL ACTION NO.: 5:23-cv-73

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff contests the decision of Administrative Law Judge Michael Finnie ("the ALJ" or "ALJ Finnie") denying her claims for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and find Plaintiff was disabled as of her date of last insured or, in the alternative, the case be remanded for additional consideration. Doc. 1 at 3–4; Doc. 12. Defendant asserts the Commissioner's decision should be affirmed. Doc. 20. For the following reasons, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on February 19, 2020. R. 11.[1] Plaintiff also filed an application for Supplemental Security Income on April 14, 2021.

---

[1]     A transcript of the entire proceedings before the Social Security Administration appears at Document Numbers 10-1 through 10-8. Although the transcript is broken into multiple PDF documents, each with its own CM/ECF docketing number, the transcript bears individual page numbers that run sequentially through the entire transcript. Record citations in this Report (identified with "R.") are to the

Id.  Plaintiff alleged an initial onset date of February 19, 2020, in both applications.  Id.  The claims were initially denied on March 15, 2021, and again upon reconsideration on November 3, 2021.  Id.  Plaintiff filed a written request for a hearing on November 24, 2021.  Id.  On January 3, 2023, ALJ Finnie held an online video hearing, at which Plaintiff, represented by a non-attorney representative, attended and testified.  Id.  Joann Hayward, a vocational expert ("VE"), also appeared at the hearing.  Id.  ALJ Finnie denied Plaintiff's claims after the hearing in a decision issued on March 7, 2023.  R. 24.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 71.

Plaintiff, born on September 13, 1985, was 34 years old at the time of the alleged onset date and 37 years old at the time of the ALJ's decision in 2023.  R. 22.  She has a high school education and previously worked as correctional officer, cosmetologist, and store manager.  R. 22.

## DISCUSSION

### I.    The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

_____

individual transcript page numbers.  For efficiency, no reference to the CM/ECF docketing number or the respective PDF page numbers is provided here.

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

 The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If

the claimant's impairment or combination of impairments is severe, then the evaluation proceeds

to step three.  The third step requires a determination of whether the claimant's impairment

meets or equals one of the impairments listed in the Code of Federal Regulations and

acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful

activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v.

Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004), superseded on other grounds by 20 C.F.R.

§ 404.1520c.  If the impairment meets or equals one of the listed impairments, the plaintiff is

presumed disabled.  Yuckert, 482 U.S. at 141.

 If the impairment does not meet or equal one of the listed impairments, the sequential

evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from

performing past relevant work, i.e., whether the claimant has the residual functional capacity to

perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th

Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of a claimant's

remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original)

(quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to

perform her past relevant work, the final step of the evaluation process determines whether she is

able to make adjustments to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

ALJ Finnie followed this sequential process to determine Plaintiff met the insured status requirements of the Social Security Act to remain insured through June 30, 2021, and had not engaged in substantial gainful activity since her alleged onset date, February 19, 2020, through her date last insured.  R. 14.  At step two, ALJ Finnie determined Plaintiff had the severe impairments of migraines and neurocognitive disorder.  Id.  The ALJ also found Plaintiff had one non-severe impairment: carpal tunnel syndrome.  Id.  At the third step, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment.  R. 14–16.

ALJ Finnie found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels.  R. 16.  The ALJ found Plaintiff was able to perform simple, routine tasks with no more than occasional contact with the general public.  Id.  The ALJ found Plaintiff could not climb ladders, ropes, or scaffolds.  Id.  The ALJ found Plaintiff must avoid all exposure to hazardous moving machinery and unprotected heights.  Id.

At the next step, the ALJ determined Plaintiff could not perform her past relevant work.  R. 22.  The ALJ concluded at the fifth and final step Plaintiff could perform jobs, such as addresser, produce weigher, or laundry worker, all of which exist in significant number in the national economy.  Id.

## II.   Issues Presented

Plaintiff, proceeding pro se, does not set forth a precise enumeration of error.  Plaintiff appears to argue the ALJ's finding Plaintiff was not disabled is not supported by substantial

evidence.  Plaintiff also appears to argue evidence attached to her brief that was not presented at the administrative level warrants remand or reversal.  Doc. 12.

III.    **Standard of Review**

It is well established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence, or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct

5

legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), overruling by statute on other grounds recognized by Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV.    Substantial Evidence Supports the ALJ's Decisions

Plaintiff's arguments are difficult to discern, but Plaintiff appears to make three or four distinct arguments.  Plaintiff argues generally the ALJ did not properly consider the evidence. Doc. 12 at 4, 8, 16–18.  Plaintiff argues the ALJ did not properly consider certain medical records.  Id. at 4.  Plaintiff appears to argue the ALJ did not properly address her subjective symptoms.  Id. at 1–4, 8, 17.  Plaintiff also argues there are problems with the VE's testimony. Id. at 17–18.

On the other hand, the Commissioner argues substantial evidence supports the ALJ's decision.  Doc. 20 at 5–19.  The Commissioner argues the ALJ properly considered the record, including Plaintiff's subjective complaints.  Id. at 6–15.

### A.    The ALJ Appropriately Considered Plaintiff's Records

Plaintiff argues the ALJ "only skimped [sic] over my not up to date mental health evaluation and the neurologist (specialist) that is still baffled about why it is that I have extreme left sided weakness with migraine," though Plaintiff cites no specific records.  Doc. 12 at 4.  The Commissioner argues the ALJ properly considered all the relevant evidence.  Doc. 20 at 6–7.

The precise nature of Plaintiff's challenge related to a mental health evaluation and a neurologist is unclear.  The record contains two psychological examinations records conducted by state examiners: an opinion by Dr. John C. Whitley on November 12, 2020, and an opinion by Dr. Steven Berger on October 20, 2021.  R. 864–70, 942–48.  The record contains mental health treatment notes and an opinion from Plaintiff's treating psychologist, Dr. Diana Walther.

R. 939–41, 949–66.  The record also contains notes from Plaintiff's treating neurologist, Dr.

Nimi Patel.  R. 791–810.  As explained in detail below, the ALJ appropriately considered

Plaintiff's mental health evaluations and neurology records.

### 1.   Legal standard.

An ALJ looking at medical opinions "will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 416.920c(a);

see Works v. Saul, No 4:19-CV-1515, 2021 WL 690126, at *15, *24 (N.D. Ala. Feb. 23, 2021).[2]

Instead, "when evaluat[ing] the persuasiveness of medical opinions," the ALJ "will consider

those medical opinions . . . using the factors listed . . . the most important factors . . . [being]

supportability . . . and consistency."  20 C.F.R. § 416.920c.  The controlling Regulation provides

some guidance to ALJs on the "supportability" and "consistency" factors.  20 C.F.R.

§ 416.920c(c)(1)–(2).  "Supportability" is a measure of how much a medical opinion is supported

by objective medical evidence and explanations provided by the medical source giving the

opinion.  See 20 C.F.R. § 416.920c(c)(1).  "Consistency" is a measure of how consistent the

medical opinion is with evidence from other sources (medical and nonmedical).  See 20 C.F.R.

§ 416.920c(c)(2).  Opinions that have a high degree of "supportability" and "consistency" should

be treated as more persuasive.  20 C.F.R. § 416.920c(c)(1)–(2).

The ALJ must articulate how supportability and consistency "were considered for a

medical source's opinion, but an ALJ is not required to articulate consideration of the remaining

---

[2]      On January 18, 2017, the Social Security Administration substantially revised the Regulations
governing how the Commissioner considers medical evidence, including medical opinions.  See 82 Fed.
Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017).  Those revisions apply to claims filed on
or after March 27, 2017, and are, therefore, applicable in this case.  Compare 20 C.F.R. § 416.920c
(applicable to claims filed on or after on or after March 27, 2017), with 20 C.F.R. § 416.927 (applicable
to claims filed before March 27, 2017).

factors." Anthony v. Kijakazi, CV 120-110, 2021 WL 4304725, at *3 (S.D. Ga. Sept. 3, 2021)

(citing 20 C.F.R. §416.920c(b)(2), and Uresi v. Comm'r of Soc. Sec., No. 2:20-CV-367, 2021

WL 2644549, at *4 (M.D. Fla. June 28, 2021)).   However, if the ALJ finds two or more medical

opinions 'about the same issues are both equally well-supported and consistent with the record,

but are not exactly the same," the ALJ will articulate how he considered the other most

persuasive factors for those medical opinions.  20 C.F.R. § 416.920c (b)(3).  The ALJ must

"provide sufficient detail concerning the degree to which he finds a medical source's opinion

persuasive so that a reviewing court may understand the ALJ's analysis."  Works, 2021 WL

690126, at *15 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir.

2011)); see Jackson v. Soc. Sec. Admin., Comm'r, 779 F. App'x 681, 684 (11th Cir. 2019).  As

with all conclusions, the ALJ's conclusions regarding medical source opinions must be

supported by substantial evidence in the record.  Buckwalter v. Acting Comm'r of Soc. Sec.,

5 F.4th 1315, 1320 (11th Cir. 2021) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155,

1158 (11th Cir. 2004)).[3]

### 2.   Dr. Whitley's opinion.

Dr. Whitley conducted a consultative psychological evaluation on November 12, 2020.

R. 864–870.  Dr. Whitley opined:

> [Plaintiff] would be limited to simple and menial types of work instructions.  Her
> ability to maintain persistence and meet production norms with simple tasks may
> be mildly impaired.  She would be precluded from complex work instructions and
> those that require multiple steps or processing large amounts of information.  Her
> ability to use appropriate judgment and make adequate decisions and deal with

---

[3]      In revising the Regulations to remove the treating source rule, the Social Security Administration
explained, "[U]nder the old rules, courts reviewing claims tended to focus more on whether the agency
sufficiently articulated the weight we gave treating source opinions, rather than on whether *substantial
evidence* supports our final decision[.]"  Revisions to Rules Regarding the Evaluation of Medical
Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (emphasis added).  Accordingly, nothing in the
revised Regulations alters the requirement the ALJ's decisions be supported by substantial evidence.

transitions over 8 hour workday would be of a moderate to significant impairment.  Her ability to interact with coworkers, public, and supervisors in a stable and appropriate manner would be moderately impaired.  She can make simple decisions for herself.  She requires assistance with [activities of daily living].  It is felt that she would require support managing appointments and financial matters.

R. 870.

The ALJ found Dr. Whitley's opinion partially persuasive.  R. 89–90.  The ALJ

remarked:

This opinion is persuasive to the extent of the limitations in [Plaintiff's] ability to use appropriate judgment and interact with others.  Throughout the record, she actively denied hallucinations, delusions, and depressed mood.  While she reported that she experiences some anxiety, she revealed that this improved with medication treatment.  During a consultative exam, she was able to recite digits both forward and backwards.  Furthermore, she was oriented to time, place, day of the week, home address, phone number, month, and year.

Id. (citations to the record omitted).  Given the ALJ found no other opinion equally well

supported and consistent with the record, the ALJ only had to discuss the supportability and

consistency of Dr. Whitley's opinion.  See 20 C.F.R. § 416.920c(b)(3).

The ALJ appropriately discussed the consistency of Dr. Whitley's opinion with other

objective medical evidence in the record.  In particular, the ALJ cited treatment records from

Plaintiff's primary care provider where Plaintiff denied hallucinations, delusions, and depressed

mood and where Plaintiff stated her anxiety improved with medication treatment.  R. 814, 817,

819, 823, 826, 830, 899, 906, 929, 932, 935, 938, 1122, 1124, 1126–27, 1130–31, 1134.

Supportability, as that term is used in 20 C.F.R. § 416.920c, refers to how much a

medical opinion is supported by objective medical evidence and explanations provided by the

medical source giving the opinion.  Even though the ALJ did not expressly use the term

"supportability," it is clear the ALJ considered whether Dr. Whitley's opinion was supported by

objective medical evidence and explanations Dr. Whitley provided.  See 20 C.F.R.

§ 416.920c(c)(1).  In discussing Dr. Whitley's opinion, the ALJ made specific references to Dr. Whitley's examination and Plaintiff's primary care treatment records.  The ALJ adequately articulated his consideration of the supportability factor for Dr. Whitley's opinion.

Furthermore, the ALJ's conclusions on supportability and consistency are supported by substantial evidence.  As the ALJ noted, Plaintiff denied hallucinations, delusions, and depressed mood and admitted medication improved her anxiety symptoms during many regular visits to her primary care provider.  See, e.g., R. 814, 823, 899, 906, 1131.  This evidence is consistent with Dr. Whitley's opinion Plaintiff has moderate impairments in interactions with others.  Dr. Whitley's examination revealed Plaintiff was able to follow instructions to recite digits forward and backward and recite her home address, phone number, the month, and the year.  R. 868. This evidence supports Dr. Whitley's opinion that Plaintiff could complete simple and menial work instructions.  Thus, substantial evidence supports the ALJ's conclusion Plaintiff's judgment and ability to interact with others is impaired to the extent Dr. Whitley opines.

### 3. Dr. Berger's opinion.

Dr. Berger conducted a consultative psychological evaluation on October 20, 2021.  Dr. Berger opined Plaintiff "will be able to remember, understand and follow simple and complex instructions comprised of two or three directives."  R. 946.  Dr. Berger further opined, "It is unlikely [Plaintiff] will have trouble getting along with others, based upon her reports of friendships and positive social interactions."  Id.

The ALJ found Dr. Berger's opinion "largely persuasive."  R. 90.  The ALJ explained:

This opinion is broadly consistent with the longitudinal record and supported by his examination of the claimant.  The claimant actively denied hallucinations, delusions, and depressed mood.  While she reported that she experiences some anxiety, she reported that this improved with medication treatment.  Furthermore, her energy level was found to be adequate.  The claimant was able to communicate with others with normal speech and full responses.  She also spoke

10

in a normal rate with no response latency.  Throughout the record, the claimant routinely denied suicidal thoughts or plans.  During the consultative examination, the claimant remained motivated.  She also appeared to be fully oriented with good judgement.

Id. (citations to the record omitted).

The ALJ appropriately discussed the consistency of Dr. Berger's opinion with other objective medical evidence in the record.  Specifically, the ALJ cited the same primary health provider records he cited in his discussion of Dr. Whitley's opinion.  As explained above, these records show Plaintiff denied hallucinations, delusion, and depressed mood numerous times, and Plaintiff reported anxiety that improved in response to medication.  The ALJ also cited Dr. Whitley's observation Plaintiff could communicate with normal speech and full responses.

It is also clear the ALJ considered whether Dr. Berger's opinion was supported by objective medical evidence and explanations Dr. Berger provided in his report.  In discussing Dr. Berger's opinion, the ALJ made specific references to Dr. Berger's examination and Plaintiff's primary care treatment records.  The ALJ adequately articulated his consideration of the supportability prong for Dr. Berger's opinion.

Substantial evidence supports the ALJ's conclusions on supportability and consistency. The record establishes a history of Plaintiff denying hallucinations, delusions, and depressed mood, and Plaintiff's anxiety improved in response to medication.  This evidence is consistent Dr. Berger's opinion Plaintiff is unlikely to have trouble getting along with others.  Further, during Dr. Berger's examination, Plaintiff appeared motivated and fully oriented with good judgment.  This evidence supports Dr. Berger's conclusion Plaintiff can follow simple instructions.  In sum, the ALJ appropriately considered Dr. Berger's opinion and sufficiently articulated his consideration of Dr. Berger's opinion.

### 4.      Dr. Walther's opinion.

Psychologist Dr. Walther provided a medical source statement dated December 15, 2022. R. 959–66.  Dr. Walther opined Plaintiff's impairment or treatment would cause Plaintiff to be absent from work more than three times a month.  R. 963.  Dr. Walther opined Plaintiff had the following limitations: an extreme restriction of activities of daily living; marked difficulties in maintaining social functioning; constant deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and continual episodes of deterioration or decompensation in work or work-like settings.  R. 964–65.  The record also contains treatment notes from Dr. Walther on September 17, 2021, October 8, 2021, October 15, 2021, October 29, 2021.  R. 939–41, 949–58.

The ALJ did not find Dr. Walther's opinion to be persuasive.  The ALJ remarked:

> This [opinion] is not consistent with the record or supported by [Dr. Walther's] examination of the claimant.  The claimant reported that she experiences some anxiety, but she reported that this improved with medication treatment.  During a consultative exam, the claimant was able to complete tasks with an adequate energy level.  Throughout the record, the claimant's mood and affect were normal.  Furthermore, the claimant's consultative examinations show that she was able to perform various tasks and complete testing.  Dr. Walther's treatment notes show that she had a blunted affect, but her treatment record contains largely what appears to be the claimant's subjective complaints.  As discussed above, the claimant responded well to conservative medication management.  Also, her activities of daily living are not consistent with marked or extreme limitations.

R. 90 (citations to the record omitted).

The ALJ expressly discussed the consistency of Dr. Walther's opinion with other medical evidence.  The ALJ cited the same primary health provider records he cited in his discussion of Dr. Whitley's and Dr. Berger's opinions.  As explained above, these records show Plaintiff frequently denied hallucinations, delusion, and depressed mood, and Plaintiff reported anxiety that improved in response to medication.  The ALJ cited hospital records showing Plaintiff was

observed with a normal mood and affect several times.  R. 992, 1021, 1054.  The ALJ also cited Dr. Whitley's consultative examination.

The ALJ properly considered whether objective medical evidence supported Dr. Walther's opinion.  The ALJ discussed the symptoms and explanations in Dr. Walther's report and treatment notes.  Specifically, the ALJ noted Dr. Walther's treatment notes largely contain Plaintiff's subjective complaints.  The ALJ adequately articulated his consideration of the supportability prong for Dr. Walther's opinion.

The ALJ's conclusion is supported by substantial evidence.  Dr. Whitley's exam notes show Plaintiff could complete a variety of tasks with an adequate energy level and calm demeanor.  R. 868.  This evidence contradicts Dr. Walther's opinion Plaintiff's concentration, persistence, or pace was restricted.  Dr. Whitley's examination also shows few limitations on Plaintiff's daily activities.  R. 867.  The record shows Plaintiff was observed with a normal mood and affect several times, despite Dr. Walther's opinion she suffered restrictions from a mental impairment.  Thus, substantial evidence supports the ALJ's decision to find Dr. Whitley's opinion unpersuasive.

### 5.    *Dr. Patel's opinion.*

Plaintiff was treated by a neurologist, Dr. Patel.  R. 791–810.  Dr. Patel's treatment records lack a detailed opinion, but Dr. Patel's notes include "assessments" indicating Plaintiff has migraines, frequent falls, episodic confusion, left-sided weakness, neuropathy of left ulnar nerve at wrist, and bilateral occipital neuralgia.  R. 799, 809.

The ALJ did not assign any specific evidentiary weight to Dr. Patel's opinions or discuss the opinions' persuasiveness.  The ALJ noted Plaintiff sees Dr. Patel for checkups and medication refills and the migraine medications generally control Plaintiff's migraines.  R. 87–

88.  The ALJ noted two examinations by Dr. Patel where Plaintiff reported no falls within the past year.  R. 88.  The ALJ cited Dr. Patel's notes throughout the written decision.  R. 83, 87–91.

The ALJ adequately addressed the supportability and consistency of Dr. Patel's opinions. The ALJ discussed Dr. Patel's notes in a broad analysis of Plaintiff's migraines, risk of falls, and left-sided weakness.  R. 87–88.  As to supportability, the ALJ noted Dr. Patel's test results and observations and Plaintiff's subjective reports to Dr. Patel throughout the written decision. R. 87–89.  As to consistency, the ALJ cited Dr. Patel's records, along with specific treatment records from other sources, to conclude Plaintiff has received conservative treatment for migraines.  R. 87–88.  Similarly, the ALJ cited numerous records from different sources, along with Dr. Patel's records, to show there is no evidence Plaintiff experiences ongoing paralysis or an inability to use the left side of her body.  R. 88.

The ALJ properly considered Dr. Patel's opinions.  The ALJ articulated his consideration of Dr. Patel's opinions by discussing Dr. Patel's notes and citing to Dr. Patel's records.  The ALJ only had to consider the supportability and consistency factors when considering Dr. Patel's opinions, and he did so.  The ALJ was not required to assign any specific evidentiary weight to Dr. Patel's opinions.  20 C.F.R.§ 416.920c(a).  To the extent Plaintiff argues the ALJ failed to properly consider Dr. Patel's opinions, Plaintiff's contention lacks merit.

**B.     Substantial Evidence Supports the ALJ's Subjective Symptom Evaluation**

Plaintiff indicates she disagrees with the ALJ's analysis of her subjective symptoms. Plaintiff contends she cannot work because of migraine headaches, weakness on one side, trouble balancing, anxiety, depression, and other various mental health symptoms.  Doc. 12 at 1– 4, 8.  Plaintiff argues all of her medications were not considered.  Id. at 8.  The Commissioner

argues the ALJ properly considered Plaintiff's subjective complaints together with the other

record evidence.  Doc. 20 at 8.

"An individual's statement as to pain or other symptoms shall not alone be conclusive

evidence of disability."  42 U.S.C. § 423(d)(5)(A).  Rather,

> there must be medical signs and findings, established by medically acceptable
> clinical or laboratory diagnostic techniques, which show the existence of a
> medical impairment that results from anatomical, physiological, or psychological
> abnormalities which could reasonably be expected to produce the pain or other
> symptoms alleged and which, when considered with all evidence . . . would lead
> to a conclusion that the individual is under a disability.

Id.  In evaluating the intensity and persistence of a claimant's symptoms and determining the

extent to which they limit work capacity, an ALJ considers "whether there are any

inconsistencies in the evidence and the extent to which there are any conflicts between [the

claimant's] statements and the rest of the evidence."  20 C.F.R. §§ 404.1529(c)(4),

416.929(c)(4).  Pertinent evidence includes: evidence of daily activities; the location, duration,

frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the

type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other

symptoms; treatment other than medication for relief of pain or other symptoms; and measures

taken to relieve pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  If an ALJ

fails to credit a claimant's testimony about her symptoms, the ALJ "must articulate explicit and

adequate reasons for doing so."  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  This

process is called a subjective symptom evaluation and is meant to assess whether a claimant's

self-described limitations are consistent with and supported by the record.  SSR 16-3p.

The subjective symptom evaluation is wholly "the province of the ALJ."  Mitchell v.

Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014) (citing Moore v. Barnhart, 405 F.3d

1208, 1212 (11th Cir. 2005)).  Reviewing courts "will not disturb a clearly articulated [subjective

symptom evaluation] supported by substantial evidence." Id. (citing Foote v. Chater, 67 F.3d
1553, 1562 (11th Cir. 1995)).  "[T]here is no rigid requirement that the ALJ specifically refer to
every piece of evidence in his decision," as long as the decision is not so broad as to prevent a
reviewing court from concluding the ALJ "considered [the claimant's] medical condition as a
whole." Mitchell, 771 F.3d at 782.  When evaluating subjective complaints, "the question is not
whether the ALJ could have reasonably considered Plaintiff's complaints, but rather, 'whether
the ALJ was clearly wrong to discredit' them." Spencer v. Kijakazi, No. CV 121-056, 2022 WL
18107085, at *4 (S.D. Ga. Dec. 5, 2022), report and recommendation adopted, 2023 WL 25368
(S.D. Ga. Jan. 3, 2023).

The record shows a variety of subjective symptom complaints.  Plaintiff submitted
headache questionnaire forms describing her migraine headaches and accompanying symptoms
(including stress and problems with sleep) and her medications.  R. 531–35, 550–59.  Plaintiff
submitted function reports describing her complaints of migraines, weakness on one side,
problems with balancing, memory lapses, anxiety, and depression.  R. 461–96, 536–49.  During
the hearing, Plaintiff testified about her migraines and left-sided weakness.  R. 111–20.  Plaintiff
also testified about lapses in memory, trouble concentrating, and trouble sleeping.  R. 113–18,
122–23.

The ALJ concluded the medical evidence did not fully support Plaintiff's subjective
symptom complaints.  R. 86–91.  As to Plaintiff's headaches and left-sided weakness, the ALJ
acknowledged Plaintiff's treatment records and her medications but found the extent of
Plaintiff's subjective complaints inconsistent with unremarkable image reports of Plaintiff's
brain, records of conservative treatment, and evidence of her daily activities.  R. 87–91.  As to
Plaintiff's mental disorder symptoms, the ALJ credited the record findings of mood disturbances,

pursuit of medication treatment, and findings of episodic confusion.  But the ALJ found

Plaintiff's complaints of profound mood disturbances inconsistent with her conservative

treatment, unremarkable mental status examinations, and her diagnosis of a "mild"

neurocognitive disorder.  R. 87, 90.  The ALJ found the record supported some limitations based

on intermittent migraines and neurocognitive disorder.  R. 90–91.

      The ALJ appropriately considered Plaintiff's subjective complaints and found the

severity of those complaints was unsupported by the objective medical evidence.  The ALJ's

decision was supported by substantial evidence because he relied on medical records that

undermined Plaintiff's reports and testimony of the severity of her symptoms and on the

conservative nature of Plaintiff's course of treatment.  See Chatham v. Comm'r of Soc. Sec., 764

F. App'x 864, 868–69 (11th Cir. 2019) (finding ALJ's decision discrediting claimant's

subjective complaints supported by substantial evidence because the ALJ explained the

complaints were inconsistent with claimant's medical records, her reported daily activities, and

the conservative treatment she had received to date).  Indeed, Plaintiff's history of conservative

treatment provides substantial evidence to support the ALJ's decision to discredit her subjective

testimony.  See Mijenes v. Comm'r of Soc. Sec., 687 F. App'x 842, 849 (11th Cir. 2017)

(finding nature of claimant's treatment, which included outpatient medication management for

bipolar and mood disorders—with the exception of one inpatient psychiatric evaluation—

provided substantial evidence to discredit the claimant's subjective complaints).  Further, the

ALJ provided an extensive review of Plaintiff's medications in his written decision.  Plaintiff

points to no subjective symptom in the record the ALJ failed to consider.  Therefore, substantial

evidence supports the ALJ's determination, and this Court cannot disturb it.

C.       **The ALJ Properly Relied on the VE's Testimony**

Plaintiff argues the VE testified she could perform jobs that do not exist in her town and that she is not capable of performing.  Doc. 12 at 17–18.  The Commissioner argues the VE responded to an appropriate hypothetical to constitute substantial evidence in support of the ALJ's decision.  Doc. 20 at 18–19.

At the last step of the sequential evaluation, and after assessing the claimant's RFC, the ALJ must determine whether a significant number of jobs exist in the national economy the claimant can perform.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).  The ALJ may make this determination by applying the Medical Vocational Guidelines or by utilizing the testimony of a vocational expert.  Id.  When relying on the testimony of a vocational expert, the ALJ must pose hypothetical questions to the vocational expert that encompass all of the claimant's impairments.  Id.  The underlying assumptions of the hypothetical questions posed to the vocational expert must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence.  McSwain v. Bowen, 814 F.2d 617, 619–20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a [vocational expert]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)).  However, a hypothetical question need not incorporate alleged impairments the ALJ has properly discredited or found to be unsupported by the medical evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").  Instead, the hypothetical simply needs to "provide

the [vocational expert] with a complete picture of the claimant's RFC."  Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1047 (11th Cir. 2020).

In finding Plaintiff could perform jobs existing in significant numbers in the national economy despite her limitations, ALJ Finnie asked the VE to consider Plaintiff's age, education, work background, and RFC (which, as discussed herein, the ALJ determined was work at all exertional levels with limitations).  R. 125–26.  Relying on this framework, the VE testified a hypothetical person could perform three unskilled jobs existing in significant numbers in the national economy: (1) addresser, DOT 209.587-010 with 101,000 jobs in the national economy; (2) produce weigher, DOT 299.587-010 with 60,000 jobs in the national economy; and (3) laundry worker, DOT 361.684-014 with 450,000 jobs in the national economy.  R. 125–26. The ALJ found the VE's testimony was consistent with the information in the DOT and Plaintiff's work experience.  R. 92.  As a result, the ALJ also found Plaintiff was not disabled within the meaning of the Act through the date of her last insured because she could adjust successfully to other work existing in the national economy.  Id.

ALJ Finnie properly incorporated Plaintiff's impairments and her resulting RFC when questioning the VE.  As explained above, the ALJ's determination of Plaintiff's RFC and limitations are supported by substantial evidence.  As a result, the ALJ posed a proper hypothetical to the VE, and the ALJ properly relied on the resulting testimony.  Further, Plaintiff's argument these jobs do not exist in Waycross, Georgia, is unavailing.  The determination of whether a claimant can perform jobs at certain exertional levels relies, in part, on whether those jobs exist in significant numbers at the national, not a local or regional, level. 20 C.F.R. §§ 404.1566(a), (c); Moore-Montgomery v. Berryhill, CV617-162, 2019 WL 1009424, at *4, n.4 (S.D. Ga. Jan. 15, 2019) (quoting Atha v. Comm'r, Soc. Sec. Admin., 616 F. App'x

931, 935 (11th Cir. 2015), and citing <u>Brooks v. Barnhart</u>, 133 F. App'x 669, 670 (11th Cir.

2005)), <u>report and recommendation adopted</u>, 2019 WL 1005200 (S.D. Ga. Mar. 1, 2019).  In

sum, substantial evidence supports the ALJ's presentation of a hypothetical to the VE and his

reliance on the ALJ's testimony and the <u>DOT</u>.

**V.       Plaintiff's Additional Evidence Does Not Warrant Remand or Reversal**

Plaintiff attached documents to her brief she contends support her disability claim but the

Commissioner did not consider those documents.  The documents consist of an MRI report from

August 8, 2023, and a letter from Dr. Walther dated November 8, 2023.  Doc. 12 at 19–22.  The

Commissioner argues these documents do not warrant remand.  Doc. 20 at 19–23.

Under the Regulations, the ALJ will accept additional evidence if he has not yet issued a

decision and the claimant did not inform the ALJ about the evidence before the deadline because

of one of the enumerated reasons in the Regulations.  20 C.F.R. § 404.935(b).  The Appeals

Council may review new evidence at a party's request if "the Appeals Council receives

additional evidence that is new, material, and relates to the period on or before the date of the

hearing decision, and there is a reasonable probability that the additional evidence would change

the outcome of the decision."  20 C.F.R. § 404.970(a)(5).  Under 20 C.F.R. § 404.970(b), the

Appeals Council will only consider additional evidence under paragraph (a)(5) if Plaintiff is able

to show good cause for not informing the Commissioner about the evidence or for not submitting

the evidence.

The ALJ issued his decision on March 7, 2023.  The documents Plaintiff attached to her

brief are dated well after the ALJ issued his decision.  Indeed, the documents were created after

Plaintiff filed her Complaint in federal court.  Plaintiff has not shown how the documents are

material or relate back to the time under consideration by the ALJ.  And Plaintiff makes no

showing of good cause.  Thus, neither the ALJ nor the Appeals Council was required to accept or

consider the evidence Plaintiff attached to her brief.  Accordingly, Plaintiff's August 8, 2023

MRI and Dr. Walther's November 8, 2023 letter are not bases to remand or reverse the ALJ's

decision.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision.  I

also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the

appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge

failed to address a contention raised in the Complaint or an argument raised in a filing must be

included.  Failure to file timely, written objections will bar any later challenge or review of the

Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v.

Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir.

R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 31st day of July, 2024.


BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA